David A. Baldwin (SBN 301970)
**LAW OFFICE OF DAVID BALDWIN**
333 S. Grand Ave., Suite 3310
Los Angeles, CA 90071
Telephone: (323) 595-3989
Facsimile: (323) 417-5176
david@davidbaldwinlaw.com

Levi M. Plesset (SBN 296039)
**LAW OFFICE OF LEVI PLESSET**
770 Haiku Rd., P.O. Box 1248
Haiku, HI 96708
Tel: (510) 499-7100
plessetlaw@gmail.com

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EMILIE BAUM, on behalf of herself and all others similarly situated and the public,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>FRITO-LAY, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | **CASE NO.:**<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violations of the Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*);<br>2. Violations of the False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*); and,<br>3. Violations of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*); and<br><br>**DEMAND FOR JURY TRIAL** |

　　　Plaintiff Emilie Baum ("Plaintiff"), on behalf of herself and all others similarly situated, by and through their attorneys, bring this Class Action Complaint against FRITO-LAY, INC.

1

CLASS COMPLAINT

("Defendant" or "FRITO-LAY"), based upon personal knowledge, and upon information, investigation, and belief of her counsel.

### INTRODUCTION

1. This class action challenges FRITO-LAY's false and deceptive practices in the marketing and sale of certain of its SunChips branded snack foods (the "Products").

2. In particular, FRITO-LAY has labeled its SunChips Original; SunChips Harvest Cheddar; SunChips Garden Salsa; SunChips Honey BBQ; SunChips French Onion; SunChips Peppercorn Ranch; SunChips Sweet Potato & Brown Sugar; and, SunChips Monterey Jack & Sundried Tomato, as containing "100% Whole Grain," however each contain maltodextrin made from corn.

3. FRITO-LAY promotes the Products as "100% Whole Grain," meaning that *all* (100 percent) of the grain ingredients in the Products are whole grain ingredients. They are not.

4. One of the primary grain ingredients in the Products is maltodextrin (made from corn). On information and belief, maltodextrin is a highly processed carbohydrate derived from corn starch through a process called hydrolysis, which uses water and enzymes or acids to cut starch molecules into smaller pieces. Maltodextrin is considered a high glycemic index food and is not a whole grain.

***Examples of Packaging Prominently Representing SunChips as "100% Whole Grain"***

  

5. As can be seen in the examples, each package of the Products prominently features "100% Whole Grain" in the center of the package in colorful font and "Whole Grain Snacks" on the bottom left of the package. The representation that SunChips are "100% Whole Grain" is uniform across the Products' marketing and labeling.

6. "100% Whole Grain" is a key differentiator that gives FRITO-LAY a unique position in the snack product market. This representation increases sales and induces customers to purchase SunChips and pay more than they otherwise would for the products.

7. There are three types of grain ingredients: whole, refined, and enriched.

   a. *Whole grains*. All grains begin as whole grains. A whole grain is a kernel comprised of three anatomical components – the germ, the bran, and the endosperm. The bran and germ are what offer important antioxidants and good sources of fiber, B vitamins, vitamin E, magnesium, iron, zinc, protein, and healthy fats. All three primary components of a grain must be present in their original proportions to qualify as a whole grain ingredient.

   b. *Refined grains.* Refined grains are processed to remove the germ and the bran components of the grain. When the bran and the germ are removed from the grain during refining processes, the grain is no longer considered whole. Approximately 25 percent of the protein naturally occurring in the grain is reduced during the refining process, and the grain is stripped of important nutrients.

   c. *Enriched grains*. Enriched grains add nutrients back into the refined grain. However, not even half of the nutrients removed during the refining process are added back into an enriched grain. The nutrients that are added back in are added in different proportions than would be present in a whole grain.

8. As each of the Products contains maltodextrin made from corn starch, the Products do not contain 100% whole grain, but in fact contain a highly processed refined grain.

9. The representation of "100% Whole Grain" on the Products is a material misrepresentation, false, and misleading as a prominent grain ingredient in the Products is maltodextrin made from corn.

10. Corn kernels are whole grains. Maltodextrin made from corn starch is made from only the endosperm of the corn kernel. The whole grain corn kernels are first refined to remove the germ and the bran part of the grain. Using only the endosperm of the grain, starch is extracted and further refined by hydrolysis to create maltodextrin.

11. Because maltodextrin has been refined, it is not a whole grain under any definition or reasonable understanding of the term. Rather, it is a highly refined grain. Thus, FRITO-LAY's representation that all (or 100%) of the grain ingredients in the Products are whole grains is false and misleading.

12. Plaintiff and the reasonable consumer expect that a product labeled "100% Whole Grain" would in fact contain the characteristics and qualities as packaged, labeled, marketed, and advertised that *all of the grain ingredients* (100% of them) would be whole grains. This means that no grain ingredient in the product would be refined or enriched.

13. In *Wallenstein v. Mondelez International, Inc,. et al.*, Case No. 22-cv-06033-VC, Judge Vince Chhabria of the Northern District of California held that labeling a food product as "100% Whole Grain" leads a reasonable California consumer to "read the packaging to mean that the product contains no grain ingredients that aren't whole."

14. FRITO-LAY knew or should have known that the inclusion of maltodextrin in the Products made the representation "100% Whole Grain" false and misleading, but it disregarded this knowledge in order to continue its deception and reap bigger profits.

15. Plaintiff and other reasonable consumers have relied upon FRITO-LAY's deceptive labeling of the Products as "100% Whole Grain" in deciding to purchase the Products. If Plaintiff and other consumers had known that the representation was false, they would not have purchased the Products or, alternatively, would have paid less for them. Thus, Plaintiff and other consumers similarly situated have suffered injury-in-fact as a result of FRITO-LAY's deceptive, false, and misleading practice.

16. FRITO-LAY's false, misleading, and deceptive practices as alleged herein are likely to continue to deceive and mislead reasonable consumers and the general public, as they have

already deceived Plaintiff and the putative class.

17. As outlined above, consumers are willing to pay more for the Products based on the belief that the Products contained 100 percent whole grain. Plaintiff and other consumers would have paid significantly less for the Products, or would not have purchased it at all, had they known that the truth about them. Thus, through the use of misleading representations, Defendant commands a price that Plaintiff and the Class would not have paid had they been fully informed. Similarly, Plaintiff and the Class purchased the Products because they are health conscious and if Defendant augmented the ingredients of the Products to contain 100 percent whole grain, they would purchase it in the future.

18. As a result of FRITO-LAY's false, misleading, and deceptive representations as alleged herein, FRITO-LAY injured Plaintiff and members of the putative class ("Class"), in that Plaintiff and members of the Class:

    a. Paid a sum of money for the Products that did not have the characteristics or qualities they were represented and promised to have;

    b. Were deprived of the benefit of the bargain because the Products they purchased had less value than what FRITO-LAY represented; and,

    c. Were denied the benefit of truthful food labels.

**THE PARTIES**

19. Plaintiff Emilie Baum is, and at all relevant times alleged herein was, a resident of San Bernardino, California, and over the age of eighteen years. Over the past several years, Ms. Baum purchased various flavors of the Products including Harvest Cheddar at Subway stores throughout Los Angeles County, California.

20. Each time Plaintiff purchased the Products, she was exposed to, read, and relied upon the representation that the Products were "100% Whole Grain," which was prominently displayed on the packages she purchased. Based upon this representation, Plaintiff reasonably expected that *all* of the grain ingredients (100% of them) in the Products were whole grains, not refined or enriched grains. Plaintiff reasonably relied on FRITO-LAY's representation when

making the decision to purchase the Products and was actually deceived because the products she purchased contained maltodextrin, which is a refined grain. At the time of purchase, Plaintiff did not know that maltodextrin was a refined grain ingredient. As a result of FRITO-LAY's actions, Plaintiff lost money and suffered injury-in-fact.

21. At the time Plaintiff purchased one of the Products, Plaintiff reasonably believed that the Products did, in fact, have the claimed characteristics as labeled and advertised.

22. Plaintiff relied on the misrepresentation alleged herein in making the decision to purchase the Products and would not have purchased the Products if she had known that the Products were not "100% Whole Grain." Plaintiff was injured in fact and lost money as a result o FRITO-LAY's improper conduct. Alternatively, Plaintiff would not have paid as much as she did for the Products, had she known that the Products were not "100% Whole Grain."

23. Plaintiff has suffered injury-in-fact and has standing to represent all other California consumers similarly situated that purchased the Products which are labeled "100% Whole Grain" but contain refined grains, including maltodextrin.

24. Each of the Products are sufficiently similar to the FRITO-LAY product that Plaintiff purchased. Each product is a SunChips snack product that are all comprised of the same primary ingredients and differ only in flavor and related sub-ingredients. FRITO-LAY makes the same, uniform, "100% Whole Grain" misrepresentation on each and every one of the Products. As a result, all Products at issue in this case uniformly suffer from the same misrepresentation that the Products are 100% Whole Grain, when, in fact, this representation is false and misleading because the Products all contain the refined grain maltodextrin.

25. Plaintiff is informed and believes that Defendant FRITO-LAY is a Delaware corporation with its headquarters in Plano, Texas. On information and belief, FRITO-LAY manufactures, markets, and distributes the Products.

26. At all times relevant herein, FRITO-LAY and its subsidiaries, parents, affiliates, and other related entities, as well as their respective employees, were the agents, servants, and employees of FRITO-LAY, and at all times relevant herein, each were acting within the course

and scope of that agency and employment.

27. Whenever reference in this Class Action Complaint is made to any act by FRITO-LAY, including its subsidiaries, affiliates, distributors, retailers, and other related entities, such allegations shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of FRITO-LAY committed, knew of, performed, authorized, ratified, and/or directed that act or transaction on behalf of FRITO0LAY while actively engaged in the scope of their duties.

## JURISDICTION AND VENUE

28. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from FRITO-LAY; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

29. Alternatively, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

30. This Court has personal jurisdiction because FRITO-LAY's contacts with the forum are continuous and substantial, and FRITO-LAY intentionally availed itself of the markets within California through marketing and sales of the Products to consumers, including Plaintiff and the putative class. FRITO-LAY also directed its advertising and marketing efforts to California.

31. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because FRITO-LAY engages in continuous and systematic business activities within the State of California. Moreover, venue is proper because a substantial proportion of the underlying transactions and events complained of herein occurred and affected entities and persons, including Plaintiff, in this judicial district. FRITO-LAY has received substantial compensation from such transactions and business activity in this judicial district as the result of thousands of purchases of the Products. Further, the Products inhabit and/or may be found in this judicial district, and the interstate trade and commerce described of herein is and has been carried out in part within this judicial district.

## CLASS ALLEGATIONS

32. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(3) on behalf of the following class: *All California residents who, within the applicable statute of limitations from the date of filing this Class Complaint ("Class Period"), purchased one or more of the Products from Defendant (the "Class").*

33. Excluded from the Class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

34. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

35. This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

36. **Numerosity**—Federal Rule of Civil Procedure 23(a)(1). Plaintiff is informed and believes, and on that basis alleges, that members of the class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of potentially millions of consumers dispersed throughout California. Accordingly, it would be impracticable to join all individual members of the Class before the Court.

37. **Commonality and Predominance**—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3). There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

    a. Whether the representation "100% WHOLE GRAIN" is false and misleading given the inclusion of the refined grain maltodextrin in the Products;

    b. Whether Defendant made material representations in the packaging, marketing and sale of the Products regarding "100% WHOLE GRAIN";

    c. Whether Defendant engaged in unlawful, unfair or deceptive business

practices by advertising and selling the Products as "100% WHOLE GRAIN";

   d. Whether Defendant violated consumer protection statutes;

   e. Whether Plaintiff and the Class members have sustained damages as a result of Defendant's unlawful conduct;

   f. The proper measure of damages sustained by Plaintiff and Class members; and,

   g. Whether an injunction is necessary to prevent Defendant from continuing its false and deceptive practices.

38. ***Typicality***—Federal Rule of Civil Procedure 23(a)(3). Plaintiff's claims are typical of the claims of the members of the Class they seek to represent because Plaintiff, like the Class members, purchased Defendant's falsely packaged, labeled, and advertised SunChips products and Plaintiff and the class members were exposed to the same misrepresentation that the Products contain "100% WHOLE GRAIN" when a primary grain ingredient in the Products is actually a refined grain. Thus, Plaintiff's claims arise from the same events, practices, and/or course of conduct that gives rise to the claims of the other class members. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class members sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class members' claims arise from the same practices and course of conduct and are based on the same legal theories.

39. ***Adequacy of Representation***—Federal Rule of Civil Procedure 23(a)(4). Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent. Plaintiff will fairly and adequately protect the interests of members of the Class and have retained counsel experienced and competent in the prosecution of complex cases including complex class action questions that arise in consumer protection litigation.

40. ***Predominance and Superiority***—Federal Rule of Civil Procedure 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the present

controversy because it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and burden on the courts that individual actions would engender. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, are far superior than any difficulties that might be argued with regard to the management of this class action. This superiority makes class litigation superior to any other method available for the fair and efficient adjudication of these claims. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

41. Threat of Continuing Misconduct: Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct, which is likely to recur.

42. Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

43. The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are also met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## FIRST CAUSE OF ACTION

### Violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*

44. Plaintiff repeats the allegations contained in paragraphs 1-43 above as if fully set forth herein.

45. This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code section 1750, *et seq*.

46. At all times relevant hereto, Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code section 1761(d).

47. The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiff and members of the Class constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

48. Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…" By representing the Products as "100% Whole Grain," Defendant has represented that the Products have certain characteristics (i.e., is made solely from whole grain) that they do not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

49. Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By representing the Products as "100% Whole Grain," Defendant has represented that the Products are of a particular standard (i.e., is made solely from whole grain) that they do not meet. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

50. Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By representing the Products as "100% Whole Grain," Defendant has represented the Products with characteristics it intended not to provide to consumers. As such, Defendant has violated section 1770(a)(9) of the CLRA.

51. At all relevant times, Defendant has known or reasonably should have known that the "100% Whole Grain" representation is misleading or likely to mislead reasonable consumers, and that Plaintiff and other members of the Class would reasonably and justifiably rely on it when purchasing the Products. Nonetheless, Defendant deceptively advertised the Products as such in order to deceive consumers into believing it is a healthier, more premium snack option.

52. Plaintiff and members of the Class have justifiably relied on Defendant's misleading

representation when purchasing the Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of Class.

53. Plaintiff and members of the Class have suffered injuries caused by Defendant because they would have paid significantly less for the Product, or would not have purchased it at all, had they known the truth about it.

54. Concurrent with filing this complaint, Plaintiff sent Defendant notice advising Defendant it violated and continues to violate, Section 1770 of the CLRA (the "Notice"). The Notice complies in all respects with Section 1782 of the CLRA. Plaintiff sent the Notice by Certified U.S. Mail, return-receipt requested to Defendant at Defendant's principal place of business. Plaintiff's Notice advised Defendant it must correct, repair, replace or otherwise rectify its conduct alleged to be in violation of Section 1770. However, Plaintiffs advised Defendant that if it fails to respond to Plaintiff's demand within thirty (30) days of receipt of this notice, pursuant to Sections 1782(a) and (d) of the CLRA, Plaintiff will amend this complaint to also seek actual damages and punitive damages.

## SECOND CAUSE OF ACTION

**Violation of California's False Advertising Law California Business & Professions ("FAL"), Code § 17500, *et seq.***

55. Plaintiff repeats the allegations contained in paragraphs 1-54 above as if fully set forth herein.

56. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

57. The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to

be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

58. Defendant has represented to the public, including Plaintiff and members of the proposed Class, through its deceptive naming and advertising, that the Products are "100% Whole Grain."  However, this representation is misleading because the Products contain the refined grain ingredient maltodextrin.  Because Defendant has disseminated misleading information regarding the Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representation is false and misleading, Defendant has violated the FAL.

59. As a result of Defendant's misleading advertising, Defendant has unlawfully obtained money from Plaintiff and members of the Class. Plaintiff therefore requests that the Court cause Defendant to restore this fraudulently obtained money to her and members of the proposed Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed Class may be irreparably harmed and/or denied an effective and complete remedy.

### THIRD CAUSE OF ACTION

**Violation of California's Unfair Competition Law ("UCL"),**

**California Business & Professions ("FAL"), Code § 17200, *et seq.***

60. Plaintiff repeats the allegations contained in paragraphs 1-59 above as if fully set forth herein.

61. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

62. The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising… "

63. Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising of the Products was "unlawful" because it violates the CLRA, the FAL, and other applicable laws as described herein. As a result

of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff and members of the proposed Class.

64. Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and injurious to consumers who rely on the naming and advertising of the Products. Deceiving unsuspecting consumers into believing the Products are made solely with whole grain is of no benefit to consumers. Therefore, Defendant's conduct was "unfair." As a result of Defendant's unfair business acts and practices, Defendant has unfairly obtained money from Plaintiff and members of the proposed Class.

65. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was fraudulent because it has the effect of deceiving consumers into believing that the Products are made solely of whole grain. Because Defendant has misled Plaintiff and members of the Class, Defendant's conduct was "fraudulent." As a result of Defendant's fraudulent business acts and practices, Defendant has fraudulently obtained money from Plaintiff and members of the Class.

66. Plaintiff requests that the Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to her, and members of the proposed Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed Class may be irreparably harmed and/or denied an effective and complete remedy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully prays for the following relief:

A. Certification of this case as a class action on behalf of the proposed Class defined above, appointment of Plaintiff as Class representative, and appointment of her counsel as Class

Counsel;

B.  A declaration that Defendant's actions, as described herein, violate the claims described herein;

C.  An award to Plaintiff and the proposed Class of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the proposed Class as a result of its unlawful, unfair, and fraudulent business practices described herein;

D.  An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

E.  An award of nominal, punitive, and statutory damages;

F.  An award to Plaintiff and their counsel of reasonable expenses and attorneys' fees;

G.  An award to Plaintiff and the proposed Class of pre- and post-judgment interest, to the extent allowable; and,

H.  For such further relief that the Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff, on behalf of herself and the proposed Class, hereby demand a jury trial for all issues triable of right by jury.

Dated:  June 4, 2025                    **LAW OFFICE OF DAVID BALDWIN**

By: _____
David A. Baldwin

Attorneys for Plaintiff
and the Proposed Class