JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-1408 JGB (SHKx)** | Date | December 11, 2025 |
|---|---|---|---|
| Title | ***Emilie Baum v. Frito-Lay Inc, et al.*** | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Defendant's Motion to Dismiss (Dkt. No. 20); and (2) VACATING the December 15, 2025 Hearing (IN CHAMBERS)

Before the Court is Frito-Lay, Inc.'s motion to dismiss the first amended complaint. ("Motion," Dkt. No. 20.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The Court **VACATES** the December 15, 2025 hearing.

## I. BACKGROUND

On June 5, 2025, plaintiff Emilie Baum ("Plaintiff") filed a a putative class action complaint against defendants Frito-Lay, Inc. ("Defendant" or "Frito-Lay") and Does 1-50. ("Complaint," Dkt. No. 1.) On August 29, 2025, Plaintiff filed a first amended complaint, which alleges three counts of: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq.; and (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq. ("FAC," Dkt. No. 18.) On September 12, 2025, Defendant filed the Motion. ("Motion.") In support of the Motion, Defendant filed a request for judicial notice and a declaration of Jasmine W. Wetherell with exhibits. ("Request," Dkt. No. 21; "Wetherell Decl.," Dkt. No. 20-1.) On September 30, 2025, Plaintiff opposed the Motion. ("Opposition," Dkt. No. 23.) On October 20, 2025, Defendant filed a reply to the Opposition. ("Reply," Dkt. No. 24.)

//

## II.   FACTUAL ALLEGATIONS

Plaintiffs allege the following facts, which are assumed to be true for the purposes of this Motion.  See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

### A.   Frito-Lay's Advertising Practices

Frito-Lay has labeled several varieties of its chips, known as SunChips, as "100% Whole Grain," including SunChips Original; SunChips Harvest Cheddar; SunChips Garden Salsa; SunChips Honey BBQ; SunChips French Onion; SunChips Peppercorn Ranch; SunChips Sweet Potato & Brown Sugar; and SunChips Monterey Jack & Sundried Tomato (collectively, "SunChips"). (FAC ¶ 2.)  This label of "100% Whole Grain" is featured prominently in the front of the package and means that all of the grain ingredients in the SunChips must be whole grain ingredients. (Id. ¶¶ 3, 5.)  Frito-Lay uses this label to increase sales and induce customers to purchase SunChips. (Id. ¶ 6.)

However, these SunChips contain maltodextrin, an ingredient made from corn. (Id. ¶ 2.)  Maltodextrin is a highly processed carbohydrate derived from corn starch. (Id. ¶ 4.)  A "whole grain ingredient" must contain the germ, the bran, and the endosperm—the three components of a whole grain kernel. (Id. ¶ 7.)  Because maltodextrin is made from corn starch, which only consists of the endosperm of a corn kernel, and is subsequently "refined by hydrolysis," maltodextrin is a highly processed refined grain and not a whole grain. (Id. ¶¶ 8, 10.)  As a result, the SunChips are not 100% whole grain because they contain maltodextrin. (Id. ¶ 9.)  Frito-Lay knew or should have known that SunChips are not 100% whole grain and continued using this label to deceive consumers and gain larger profits. (Id. ¶ 14.)

Plaintiff Emilie Baum has purchased various flavor of SunChips at Subway stores throughout Southern California over the last several years. (Id. ¶ 19.)  She relied on Frito-Lay's representation that the SunChips were 100% whole grain when she made those purchases. (Id. ¶ 20.)  She did not know that maltodextrin was a refined grain ingredient. (Id.)  She would not have purchased SunChips had she known that they were not 100% whole grain. (Id. ¶ 22.)

## III.   LEGAL STANDARD

### A.   Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)")[1], a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of

---

[1] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).  Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted).  Courts also need not accept as true allegations that contradict facts which may be judicially noticed.  See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

**B.    Rule 15**

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)).  Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

## IV.    DISCUSSION

Defendant moves to dismiss the FAC with prejudice in its entirety for failure to state a claim under Rule 12(b)(6) and for failure to establish jurisdiction.  (See Motion at 9-10.)

**A.     UCL, FAL, and CLRA Claims**

Defendant argues that no reasonable consumer would consider maltodextrin to be a grain ingredient, nor does Plaintiff explain why she or any reasonable consumer would consider maltodextrin to be a primary ingredient.  (Mot. at 13-14.)  Even if some consumers, however, did consider maltodextrin to be a grain ingredient, that would only establish ambiguity, and not deceptiveness, as to the label "100% Whole Grain."  (Mot. at 17-19.)  Plaintiff responds that "Frito-Lay's position defies logic and common sense" because "it is simply a fact that corn maltodextrin is a grain ingredient."  (Opp. at 3-4.)  Furthermore, Defendant's label is deceptive because corn maltodextrin is not, as Defendant claims, merely a minor ingredient.  (Opp. at 4.)

California's FAL prohibits any "unfair, deceptive, untrue, or misleading advertising."  Cal. Bus. & Prof. Code § 17500.  "This statute makes it unlawful for a business to disseminate any statement which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Arevalo v. Bank of Am. Corp., 850 F. Supp. 2d 1008, 1023-24 (N.D. Cal. 2011) (citation modified).  California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.  California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  The UCL provides a separate theory of liability under the "unlawful," "unfair," or "fraudulent" prongs.  Stanwood v. Mary Kay, Inc., 941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012) (citing Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 731 (9th Cir. 2007)).  "The UCL expressly incorporates the FAL's prohibition on unfair advertising as one form of unfair competition."  Hinojos, 718 F.3d at 1103.  Accordingly, any violation of the FAL also violates the UCL.  Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008) (citing Kasky v. Nike, Inc., 27 Cal. 4th 939, 950 (2002)).

Claims under the FAL, CLRA, and UCL are "governed by the 'reasonable consumer' test."  Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008).  Under this test, Plaintiff "must 'show that members of the public are likely to be deceived.'"  Id. (citing Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir.1995)).  That means that "a significant portion of the general consuming public or of target consumers, acting reasonably in the circumstances, could be misled," and not just that a "few consumers" viewing the labeling "in an unreasonable manner" would be misled.  Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016) (citing Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496 (2003).

This case rests on whether a reasonable consumer would understand maltodextrin to be a grain ingredient.  The Court finds that it is not.  Although Plaintiff argues that "it is simply a fact that corn maltodextrin is a grain ingredient," Plaintiff does not explain why in the Opposition.  (Opp. at 4.)  Presumably, Plaintiff believes that maltodextrin is a grain ingredient because it is made from corn starch, which is made from the endosperm of the corn kernel.  (FAC ¶ 10.)

However, Defendant points out that maltodextrin is a "refined carbohydrate," which is better understood as a "chemically transformed additive." Defendant contends that under Plaintiff's understanding of a grain ingredient, vinegar, sugar,[2] and soy sauce, which are all derived from wheat would similarly be considered a grain ingredient. (Mot. at 15.) Likewise, corn oil, which is the second ingredient in SunChips Garden Salsa, would be considered a grain ingredient.[3] (See Wetherell Decl., Ex. C.) Furthermore, maltodextrin is merely used "in trace amounts to serve technical functions such as helping powdered seasoning adhere to a chip's surface." (Mot. at 15.) The Court notes that maltodextrin is listed as an ingredient that makes up "less than 2% of" all the SunChip flavors, except SunChip Original, where it is not listed at all, and Sun Chips Harvest Cheddar and SunChips SweetPotato & Brown Sugar, where it is listed as the seventh ingredient. (See Wetherell Decl., Ex. C.) Finally, the FDA lists maltodextrin as one of its "Substances Added to Food," and states that it is used as an "anticaking agent or free-flow agent, flavoring agent or adjuvant, humectant, nutrient supplement, nutritive sweetener, solvent or vehicle, stabilizer or thickener, surface-active agent, or texturizer." (Id., Ex. I.) No part of the FDA listing indicates that maltodextrin is a grain ingredient, and Plaintiff does not contest the accuracy or propriety of the FDA listing. (See id.) Plaintiff's allegations support this understanding of maltodextrin because cornstarch, which forms the basis of maltodextrin, "is further refined by hydrolysis" until it becomes "a highly processed carbohydrate." (FAC ¶¶ 4, 10.) Because the Court finds that maltodextrin is not a grain ingredient, the Court finds that a reasonable consumer would not likely be deceived by the "100% Whole Grain" label.

Although Plaintiff argues that Wallenstein v. Mondelez Int'l, Inc, supports its position, the Court disagrees. No. 22-CV-06033-VC, 2023 WL 3102555 (N.D. Cal. Apr. 25, 2023). There, the defendant argued that a reasonable consumer would not be deceived by its argument that Wheat Thins are 100% whole grain because cornstarch, a refined grain, is "one of the product's top ingredients." Id. at *3. Judge Vince Chhabria found that expecting a reasonable consumer to know the difference between different types of grains, and that cornstarch is a refined grain, "would to be replace the reasonable consumer standard with something more demanding." Id. Here, however, the Court finds that maltodextrin is not a top ingredient in SunChips. Most importantly, maltodextrin is not cornstarch, but instead a "refined carbohydrate." (Mot. at 14.)[4] Instead, the Court finds this case more analogous to Ang v.

---

[2] Plaintiff responds that sugar is not a corn product but does not explain what sugar might instead consist of. (Reply at 2.)

[3] The Court **GRANTS** the Request. Plaintiff does not oppose the Request or contest the accuracy of the documents to be judicially noticed. (See Opp.) The SunChip labels (Ex. A-H) are judicially noticeable because they are incorporated in the complaint be reference. See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010) ("On a motion to dismiss, we may consider materials incorporated into the complaint or matters of public record."). Additionally, the FDA listing of maltodextrin (Ex. I) is judicially noticeable under Fed. R. Evid. 201.

[4] The Court also notes that a type of sugar, corn syrup, although similarly derived from cornstarch, is not considered a grain ingredient. See "Corn Syrup," Merriam-Webster.com (2025), https://www.merriam-webster.com/dictionary/corn%20syrup (last visited Dec. 9, 2025)

<u>Whitewave Foods Co.</u>, No. 13-CV-1953, 2013 WL 6492353 (N.D. Cal. Dec. 10, 2013).  There the plaintiffs focused primarily on the word "milk," much as Plaintiff here focuses on the word "corn," to argue that the use of the word "milk" could confuse consumers that plant-based beverages, like soy milk, are dairy milk.  <u>Id.</u> at *4.  Judge Samuel Conti found, however, that any confusion between plant milk and dairy milk, because of the word "milk," would be "highly improbable."  <u>Id.</u>  Likewise, the fact that maltodextrin was at one point "corn," does not make it a grain ingredient and would not likely deceive a consumer that it is a whole grain ingredient.

In sum, the Court finds that maltodextrin is not a grain ingredient, and that a reasonable consumer would not likely be deceived by the "100% Whole Grain" label.  Although amendment is generally granted, Plaintiff cannot possibly amend their complaint to cure the deficiency the Court has explained above.  Accordingly, the Court **DISMISSES** the FAC **WITH PREJUDICE**.

### V.    CONCLUSION

For the above reasons, the Court **GRANTS** the Motion, **DISMISSES** the FAC **WITH PREJUDICE**, and **VACATES** the December 15, 2025 hearing.  The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED.**

---

(defining corn syrup as "a syrup containing dextrins, maltose, and dextrose that is obtained by partial hydrolysis of cornstarch").